## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LAJUAN GORDON,**

    **Petitioner,**

  **v.**          **Civil Action No. 3:09cv75**
                **Criminal Action No. 3:05cr68**
                **(Judge Bailey)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

### REPORT AND RECOMMENDATION

On November 30, 2009, petitioner, through counsel, filed a petition under 28 U.S.C. § 2255 for Writ of Habeas Corpus by a Person in Federal Custody.[1]  This case is before the undersigned for a preliminary review pursuant to LR PL P 83.15, *et seq.*

Upon a preliminary review of the petition, it appeared that the petition was untimely, having been filed eight months and twelve days after the one-year statute of limitations had expired.  Thus, pursuant to <u>Hill v. Braxton</u>, 277 F.3d 701, 707 (4ᵗʰ Cir. 2002), on December 18, 2009, the undersigned issued a notice advising the petitioner that his case would be recommended for dismissal unless he could show that his motion was timely.  <u>See</u> (Dkt.# 638).

On February 16, 2010, petitioner finally filed his response[2] (Dkt.# 652) to the Court's <u>Hill v. Braxton</u> Notice, asserting that his conviction became final on March 18, 2009 because the period

---

[1] Docket # 632.

[2] Prior to responding, petitioner filed two motions requesting extensions of time; one on January 7, 2010 (Dkt.# 643), and one on February 2, 2010 (Dkt.# 649), each of which were granted, the first by Order on January 12, 2010 (Dkt.# 644) and the second by Order entered February 2, 2010 (Dkt.# 650).

1

of time for filing a petition for writ of certiorari expired on that date,[3] but that pursuant to 28 U.S.C. § 2255(D)[4] the period of limitation for timely filing of a § 2255 petition begins to run "from the latest of the following four dates . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." (Dkt.# 652 at 1-2).

Petitioner claims that subsequent to his guilty plea, Carter, a co-defendant, forwarded a letter to the District Judge recanting certain statements Carter had made to agents during his own debriefing which purportedly exonerated petitioner as to a drug-related firearm transaction, and further indicated that Carter had misled another co-defendant, Christian, in order to incriminate petitioner. Petitioner further asserts that a review of the transcript from his own sentencing hearing reveals that petitioner's then-counsel, attorney Lambert "did, in fact, attend the sentencing of . . . [co-defendant] Carter," (Id. at 2); that a part of Carter's letter that had been "submitted" at Carter's sentencing hearing was subsequently read into the record of petitioner's sentencing hearing at the request of petitioner's then-attorney Lambert, but that "apparently the court clerk only read the first three (3) paragraphs of said letter indicating that Mr. Gordon was not involved in any firearms transaction," omitting to read aloud the postscript to the letter, which would have revealed that "there was a misunderstanding as to the distribution of eight balls of cocaine and the agents assumed that he was referring to the Petitioner, when, in fact, . . . [Carter] indicates in the postscript . . . that he was actually referring to eight balls of cocaine purchased from the co-defendant, Ms. Christian not [sic] from the Petitioner." (Id. at 2- 3). Petitioner's response further asserts that he retained his

---

[3] Petitioner's counsel is mistaken; Petitioner's conviction became final on March 18, 2008; the period of time for filing a §2255 petition was final one year later on March 18, 2009.

[4] Petitioner's counsel has misidentified the statute; there is no 28 U.S.C. § 2255 (D); the undersigned presumes counsel intended to reference 28 U.S.C. § 2255 (f)(4).

present counsel to ascertain whether any issues existed for habeas corpus relief and that only after "substantial effort" was counsel able to obtain a copy of [petitioner's former] attorney Lambert's file from petitioner's court-appointed appellate counsel; that nowhere in attorney Lambert's file was there a copy of co-defendant Carter's letter; that both petitioner and his counsel were "completely unaware of the postscript in said letter, as it was not read into the record [at petitioner's sentencing hearing] . . . and to the best of the knowledge of [petitioner and counsel] . . . the entire letter with the postscript was never made part of the record or placed into the court file" of petitioner's case. (Id. at 3). Further, petitioner avers, a review of the transcript of petitioner's sentencing indicates that although the District Court did address the issue of co-defendant Carter's retraction of the allegation regarding petitioner's involvement in the firearm transaction, it made a finding of fact that co-defendant Carter was not credible on that issue since Carter had pled guilty to conspiracy to possession of a firearm in a drug transaction.

Petitioner claims that, relative to his own sentencing, the District Court never addressed the issue of Carter's correction of his earlier statement to the agent that debriefed him that the drugs Carter originally attributed to petitioner (that formed the basis for petitioner's relevant drug conduct) were not in fact obtained from petitioner at all. Petitioner reiterates his claim that he is serving a greater sentence than he otherwise would have received, based "solely on the credibility" of co-defendant Carter, and that his § 2255 petition is untimely because his present counsel "had no reason to believe . . . [Carter's letter] had any relevance to the quantity of drugs attributable to petitioner" (Id. at 4). Petitioner claims that he only became aware of the letter's relevance "in and about September 2009" after discussions with present counsel regarding the impact of the firearm allegation limiting petitioner's access to and participation in certain prison programs. (Id. at 5), and

3

that prior to that date, even though petitioner and counsel met "at the Eastern Regional Jail and subsequently at FCI, Morgantown on numerous occasions . . . the significance of a firearm as to the programs . . . [petitioner] could participate in was never raised by the Petitioner." (Id.). Petitioner asserts that subsequent to the September 2009 conversation, his counsel reviewed all the docket entries in co-defendant Carter's case, including Carter's own § 2255 motion that said "there was no gun involved in the within case," (Id.) before finally discovering Carter's letter docketed there; that his present counsel sent a copy to petitioner and then met with him at FCI Cumberland where petitioner advised him that "he had no knowledge until he saw the . . . letter of Co-Defendant . . . Carter [that Carter] had ever stated there was an error in the quantity of drugs alleged to have been attributed by him to the petitioner." (Id. at 6).

Petitioner avers that until Carter's letter was provided to him by his present counsel he had "absolutely no knowledge, or reason to believe that there was a significant question that should have been addressed" (Id.) at his sentencing hearing as to the quantity of drugs attributable to him; that prior to September 2009 there was no reason for him to believe that there was any issue that could have been inquired into and had he been aware earlier of the full contents of the letter, he would have timely filed his § 2255 petition.

Petitioner asks the Court to deem his § 2255 petition timely filed since the date on which the factual predicate of the claim he is presenting could not have been discovered earlier through the exercise of due diligence, or, in the alternative, that he be granted a hearing on the issue of whether his petition was timely filed.

## I. <u>Factual and Procedural History</u>

### A. <u>Petitioner's Conviction and Sentence</u>

On September 22, 2005, the petitioner was named in four counts of a 26-count indictment (Dkt.# 1), charging him with conspiracy to distribute more than fifty grams of cocaine base, also known as "crack," in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; conspiracy to trade a quantity of cocaine base in order to commit a § 924(c) violation (using a firearm in connection with a drug trafficking crime) in violation of Title 18, U.S.C. § 371; distribution of approximately 1.0 grams of cocaine base in exchange for $100, in violation of Title 21, U.S.C. §§ 841(a)(1), 841(b)(1)(C) and Title 18 U.S.C.§ 2; and distribution of 2.6 grams of cocaine base in exchange for $300.00, in violation of Title 21, U.S.C. §§ 841(a)(1), 841(b)(1)(C). On April 21, 2006, the petitioner pled guilty to Count 13 of the indictment, distribution of cocaine base, a violation of 21 U.S.C.§ 841(a)(1). On July 27, 2006 the petitioner's plea was accepted and he was sentenced and he was sentenced to a term of 240 months to be followed by three years of supervised release and payment of a $100 special assessment fee.

## B.   Appeal

Petitioner filed a Notice of Appeal on July 28, 2006 (Dkt.# 435). On December 18, 2007, the Fourth Circuit Court of Appeals affirmed the petitioner's conviction and sentence by *per curiam* unpublished opinion. (Dkt.# 523). Petitioner made no motion for rehearing and the record does not reflect that the petitioner ever filed a writ of certiorari with the Supreme Court of the United States. Accordingly it appears that the petitioner's conviction became final on March 18, 2008, when the time for seeking such review expired. *See* Clay v. United States, 537 U.S. 522 (2003).

## C.   Other Collateral Proceedings

On April 18, 2008, an Order was entered appointing a federal public defender to petitioner for the purpose of pursuing a sentence reduction under 18 U.S.C. § 3582(c)(2). (Dkt.# 535). On

March 30, 2009, an Order was entered reducing petitioner's sentence from 240 months to 235 months, pursuant to 18 U.S.C. § 3582(c)(2). (Dkt.# 570). On September 2, 2009, petitioner filed a *pro se* Motion for Reconsideration for Order Reducing Defendant Sentence Pursuant to 18 U.S.C. 3582(c) (Dkt.# 601), seeking a further reduction of his sentence; that motion was denied by Order entered on September 4, 2009. (Dkt.# 603).

**D. Federal Habeas Corpus**

In the petition, petitioner asserts the following:

1) the totality of relevant drug conduct underlying petitioner's charges were dependent upon the word of co-defendant Carter or of other persons who stated that they received crack cocaine from Carter that Carter alleged he had received from petitioner;

2) co-defendants Carter and Christian both alleged that petitioner exchanged an AK 47 firearm for crack cocaine;

3) a review of petitioner's Pre-Sentence Report reveals that petitioner's base offense level was calculated using the information obtained from co-defendants Carter and Christian regarding the firearm transaction and petitioner's relevant drug conduct;

4) subsequent to petitioner's guilty plea, co-defendant Carter sent a letter to the District Judge recanting the statements he had made to agents during his own debriefing that claimed that petitioner was involved in the firearm transaction and further stating that he had misled co-defendant Christian in order to entrap petitioner;

5) a review of co-defendant Carter's letter indicates that Carter further claimed that statements he made to the case agent who debriefed him regarding the purchase of 8 balls of crack cocaine were misconstrued by the agent as applying to petitioner when that was incorrect; co-

defendant Carter was actually referring to purchases made from co-defendant Christian, not petitioner;

6) there is no indication in the record that, subsequent to petitioner's guilty plea and prior his sentencing, the Government ever forwarded a copy of co-defendant Carter's letter to petitioner's then-counsel attorney Lambert.

7) A review of petitioner's sentencing transcript indicates that petitioner's then-counsel, attorney Lambert "did in fact attend the sentencing of [co-defendant] . . . Carter" and that further, "a portion of [co-defendant Carter's] . . . letter was read into the record[]" at petitioner's own sentencing.  (Dkt.# 632 at 6).

8) It was "incumbent upon the government to provide . . . [petitioner] with any and all information that the government had as to the credibility of . . . [co-defendant] Carter, especially in light of the fact that . . . [co-defendant Carter] recanted a substantial portion of his debriefing by letter and at his [own] sentencing hearing." (Id).

9) Petitioner's present counsel has been "advised by . . . [petitioner] that he was unaware of the extent to which . . . [co-defendant] Carter had recanted substantial portions of his debriefing and especially was unaware that . . . [co-defendant Carter] indicated in his letter that he was referring in his debriefing to '8 balls he had purchased from . . . [co-defendant] Christian and not from . . . [petitioner].'" (Id. at 6-7).

9) If the Government had revealed all of the information in its possession relative to the recantation by co-defendant Carter, petitioner could have had Carter subpoenaed as a witness at his sentencing hearing, in order to challenge Carter's credibility as to petitioner's relevant drug conduct.

10) Because the determination of petitioner's relevant drug conduct was based solely on the

credibility of co-defendant Carter, had there been full disclosure by the Government of co-defendant Carter's recantation, petitioner's base offense level would have been lower and he would have had an additional 3-level reduction resulting in a sentencing guideline range of 121 to 151 months, instead of the 240 month statutory maximum sentence he received.

11) Petitioner avers that he had never previously seen or been given a "copy of said letter[,] that undersigned counsel found it as part of a review of the docket entries of George Carter[,]" and having never had access to the letter, it was "impossible for . . . [petitioner] to know that he had a substantial basis to impeach the credibility of Co-defendant . . . Carter and that he should have had the ability to call the co-Defendant as a witness at sentencing to support . . . [petitioner's] allegation that he was not involved in the quantity of drugs as set forth as part of the relevant conduct . . . and that he had no involvement with the firearm or to at least call the case agent to testify as to the debriefing of . . . [co-defendant] Carter [sic]." (Id. at 8).

12) Petitioner was not even aware of the significance of co-defendant Carter's letter until his present counsel provided it to him.

13) Petitioner asserts that the interests of justice would be best served by permitting him to file his § 2255 petition, and in furtherance of that, requests that: his sentence be vacated and he be given a new sentencing hearing; the Government be ordered to provide him with copies of all notes made and any reports filed by the agents involved in co-defendant Carter's debriefings; and that he be granted an evidentiary hearing on this matter because he "did not know, and could not have known the exact contents of said letter that had been provided to him [sic] or his attorney." (Id. at 9).

## II.   Analysis

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion.  28 U.S.C. § 2255.

The limitation period shall run from the last of:

1.      The date on which the judgment of conviction becomes final;

2.      The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3.      The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;[5] or

4.      The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 (f).

"For purposes of the limitations period of § 2255, when there is no direct appeal, a judgment of conviction becomes final ten days from the date judgment is entered."  See Sherrill v. United States, 2006 WL 462092 *1 (W.D.N.C. Feb. 23, 2006); see also Fed. R. Crim. P. 45(a).  In this case, petitioner appealed his conviction and sentence to the Fourth Circuit Court of Appeals, where the District Court's judgment was later affirmed.  Since petitioner did not file a writ of certiorari to the

---

[5] The one-year statute of limitation period under this subsection runs from the date on which the Supreme Court initially recognized the right asserted, not from the date on which the right asserted was made retroactive.  Dodd v. United States, 545 U.S. 353 (2005).

U.S. Supreme Court, his conviction became final on March 18, 2008. Therefore, the petitioner had one year from that date in which to timely file a § 2255 motion. The instant motion was filed on November 30, 2009, well after the statute of limitations had already expired.

However, the Fourth Circuit has held that the AEDPA statute of limitations is subject to equitable modifications such as tolling. <u>United States v. Prescott</u>, 221 F.3d 686, 687-88 (4th Cir. 2000). Nonetheless, "rarely will circumstances warrant equitable tolling." <u>Rouse v. Lee</u>, 339 F.3d 238, 246 (4th Cir. 2003). In order to be entitled to equitable tolling, petitioner bears the burden of presenting evidence which shows that he was prevented from timely filing his § 2255 petition because of circumstances beyond his control, or external to his own conduct, and that it would be unconscionable, or that a gross injustice would occur, if the limitation were enforced. <u>Harris v. Hutchinson</u>, 209 F.3d 325, 330 (4th Cir. 2000). To make such a showing, petitioner must also show that he employed reasonable diligence in investigating and bringing his claims. <u>Miller v. New Jersey State Department of Corrections</u>, 145 F.3d 616, 617 (3rd Cir. 1998).

Here, a review of the docket reveals that petitioner was sentenced on July 27, 2006 and filed his Notice of Appeal on July 28, 2006 (Dkt.# 435). The Fourth Circuit Court of Appeals affirmed his conviction and sentence by *per curiam* unpublished opinion on December 18, 2007 (Dkt.# 523). Petitioner made no motion for rehearing and the record does not show that he filed a writ of certiorari with the Supreme Court of the United States. Accordingly it appears that petitioner's conviction became final on March 18, 2008, when the time for seeking such review expired. *See* <u>Clay v. United States</u>, 537 U.S. 522 (2003).

Therefore, under AEDPA, petitioner had until March 18, 2009 to timely file a § 2255 motion. However, petitioner did not file his petition until November 30, 2009, eight months and twelve days

after the statute of limitations had already expired.

A review of the docket reveals that petitioner misstates the facts and the record in both his § 2255 petition and his response to the <u>Hill v. Braxton</u> Notice. Petitioner's self-serving claims of due diligence in his response to the <u>Hill v. Braxton</u> Notice, describing frequent consultation, communication and intensive discovery with counsel on his habeas corpus claims *in and before* the date of September 2009 is belied by the record. Petitioner's own *pro se* filings and communications with the Clerk of the District Court while represented by counsel clearly indicate otherwise.

The docket reflects that shows that as early as September 28, 2006, two months after filing his notice of appeal, petitioner filed a *pro se* Motion to Appoint Counsel to file a habeas corpus petition on his behalf. (Dkt.# 466). That motion was denied by Order entered on January 25, 2008. (Dkt.# 529).

On April 16, 2008, approximately one month after petitioner's conviction became final, petitioner's counsel entered a motion for leave to appear *pro hac vice* and a Notice of Appearance on petitioner's behalf (Dkt.# 533); he was substituted for petitioner's court-appointed appellate counsel on the docket that same day; the *pro hac vice* motion was granted by Order entered on April 30, 2008. (Dkt.# 536).

On March 18, 2009, approximately ten and one half months after the substitution of petitioner's present retained counsel was effected, the one year statute of limitations for timely filing of the § 2255 motion expired. Almost two and a half months later, on May 29, 2009, petitioner sent a letter to the Clerk of the District Court (Dkt.# 580), inquiring about the status of his § 2255 motion, "submitted to the Court [in] Feb. 2009." A copy of the docket sheet was mailed to him that day, showing that no § 2255 motion had ever been filed.

Over two and one half months later, on August 17, 2009, petitioner filed a *pro se* Motion to Supplement [§ 2255 motion] and Request for Documents Pretaining [sic] to the Above Mentioned Case (Dkt.# 596), bitterly complaining that "the Attorney of Record has not forewarded [sic] the petitioner any Document pretaining [sic] to his criminal case or his 2255 motion at all . . . [t]o be factual the petitioner has not even been afforded the Attorney of Record 2255 breif [sic]."[6]

Approximately two and a half weeks later, on September 17, 2009, petitioner filed a *pro se* Motion for Permission to File Late 28 U.S.C. § 2255 [sic] (Dkt.# 613), claiming that he was "under the impression that the attorney had submitted the 2255 [sic] . . . as he was hired by the defendant's mother." Petitioner's motion averred that he had learned that a public defender had been appointed to represent him,[7] but that neither his public defender nor his retained counsel had contacted him or "performed the duties as Attorney's [sic] And for these reasons the petitioner does . . .request... permission to file a belated . . . 2255 motion. In light of the two Attorney's [sic] failure to proceed with the defendant's request." (Id. at 2).[8]

The present § 2255 motion was finally filed by petitioner's counsel almost two months later, on November 30, 2009.

The record certainly does not support an inference of frequent, close, regular

---

[6] Because there was no filed § 2255 motion to supplement, that motion was denied as moot by Order entered on September 1, 2009 (Dkt.# 599).

[7] By Order entered on April 18, 2008, a public defender was appointed to petitioner for the purpose of pursuing a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). (Dkt.# 535). An Order reducing petitioner's sentence from 240 months to 235 months, pursuant to 18 U.S.C. § 3582(c)(2), was entered on March 30, 2009. (Dkt.# 570).

[8] By Order entered on October 6, 2009 (Dkt.# 618), petitioner's motion for permission to file an untimely § 2255 petition was denied for lack of jurisdiction because it was not a "case or controversy" within the meaning of Article III of the United States Constitution; was not filed with or after a § 2255 motion, nor could it be construed as a § 2255 motion, because it contained no facts or allegations sufficient to constitute a cognizable § 2255 claim.

communication between petitioner and his present retained counsel on the preparation of his § 2255 claims in the months preceding the date that he finally filed his untimely petition, despite the fervent claims to the contrary now asserted in petitioner's response to the Hill v. Braxton Notice.

Further, petitioner's contention that his then-counsel, attorney Lambert attended co-defendant Carter's sentencing hearing [9] where Carter first "submitted" the letter in question, and then, the following day, at petitioner's own sentencing, requested that the clerk read the letter into the record, is patently false. The transcript from co-defendant Carter's July 26, 2006 sentencing hearing reveals that attorney Lambert was not even present at Carter's sentencing; those who were in attendance were co-defendant Carter, his counsel, Barry Beck, Thomas Mucklow, AUSA, the District Judge and the court reporter. Co-defendant Carter spoke extemporaneously in reference to the letter at his sentencing hearing; despite the Court's invitation to Carter to do so, no portion of it was read aloud,[10] as the following interchange from Carter's sentencing hearing reveals:

THE COURT: . . Do you wish to make a statement, sir?

THE DEFENDANT [CARTER]: Yes, sir, I would just request that this statement be added to my record.

THE COURT: Okay, would you wish to approach the podium along with Mr. Beck, and you can read that into the record and we'll note receipt of it?

THE DEFENDANT: I would just like the Court to know my name is George Carter. And in this

---

[9]Carter was sentenced on July 26, 2006, the day before petitioner; the letter had apparently had just been received by the Court at that time.

[10] The actual text of Carter's letter reads as follows: "Confession. Deposition for Sentencing. Case # 3:05cr68-05. I George Carter paid Mike Lawrence $20.00 to remove the AK47 left in my house. He sold it and Bought [sic] me $150.00 I purchased crack cocaine for JoAnn Christian and myself. Mr. Gordon had nothing to do with any gun transaction. I miss led [sic] Ms. Christian in her own pursuit to entrap Mr. Gordon. *[signed]* Gorge B. Carter. *[post-script]:* See investigative Report #9 paragraph 4 Report #10 interview with defendant Carter is inacurate [sic]. (paragraph 1) never saw Rutherford only heard him. (paragraph 2) completely fabricated. (paragraph 3) I was speaking of 8 Balls I bought from Christian not Gordon construed by det. Harris. [sic] *[signed]* George B. Carter."

particular incident, I gave this gun to Mike Lawrence for $20 to get it out of my house. I found it on my kitchen floor. Nobody was attending to it. My six-year-old granddaughter said, Pap Paw, what's in that case? So we opened it up and there was the AK-47. I had to have a way to get it out of my house. That's how I got involved in this incident. And I wanted the Court to know that everybody keeps saying, Gordon, Gordon. We intended on selling this gun to Gordon. However, this gun never got to Gordon. The cocaine came about before Gordon come into play. We got the cocaine from Gordon, but the gun never went to Gordon. And I just want the Court to know the truth about the matter since I'm going to have to do the time over the matter. And I wrote a statement right here.

THE COURT: Okay, and Mr. Beck, maybe you can take that from him and we'll tender it to the court clerk? Mr. Beck?

MR. BECK: Thank you, Your Honor.

Transcript of Continued Sentencing (of co-defendant) George Carter, (3:05cr68-5, Dkt.# 465 at 11 - 12).

The actual circumstances regarding the discovery of Carter's letter by petitioner's former

counsel Lambert are revealed in this exchange from petitioner's own July 27, 2006 sentencing the

following day:

THE COURT: . . . So, Mr. Lambert, you may address the Court about the tentative findings as to the applicable Guideline.

MR. LAMBERT: Thank you, Judge. . . Judge I am very concerned about Mr. Carter's plea agreement. Mr. Carter's attempted withdrawal of his plea agreement, and a telephone call that my office got last night from a Mrs. Carter, who is Mr. Carter's spouse. She indicated to me this morning when I returned her call that Mr. Carter had presented evidence to the Court whenever he was sentenced here sometime this week that, to the extent she said [sic] exonerated Mr. Gordon from any implication of the use of a firearm. An AK-47. I went on the web immediately. I looked at the Court's order, which didn't say anything to that effect. It just said that Mr. Carter apparently, I think the term was, had a minium or minor role. . . I went over to the clerk's office this morning, afternoon rather, and I tried to find a document that Mr. Carter may have filed with the Court which indicates no culpability on behalf of Mr. Gordon in connection with the AK-47. I am at a loss there, Judge, and I would ask the Government to proffer if they know what happened with respect to Mr. Gordon's - - strike that, to Mr. Carter's statement?

THE COURT: Ms. Zombek, do you have that?

THE CLERK: I do.

THE COURT: I don't know if he actually says this in here, but this is what he says. If - - Mr. Gordon had nothing to do with any gun transaction. I misled Ms. Christian in her own pursuit to entrap Mr. Gordon. Signed, George Carter.

Sentencing Transcript, Lajuan Gordon, Dkt.# 453 at 10 - 11.

It is apparent that the Court briefly paraphrased what it believed was the key information that counsel for petitioner was inquiring about, relative to Carter's retraction of his allegation about petitioner's involvement in the gun transaction. The Court's clerk did not read any portion of Carter's letter into the record at petitioner's sentencing, let alone its first three paragraphs, or read it "at the request of petitioner's counsel" attorney Lambert. Regardless, clearly petitioner was aware of the information from Carter's letter that was relevant to his § 2255 claims regarding the gun transaction for three years and four months before he filed his untimely § 2255 petition. As to the information regarding the disputed "eight balls of cocaine" mentioned in the letter's postscript, but not "read aloud into the record," purportedly exonerating petitioner as to the amount of his drug involvement, whatever Carter's motives were in attempting to correct or retract the statement about the amount of drugs petitioner distributed, Carter's *ex tempore* speech at his own sentencing still says "*We got the cocaine from Gordon*, but the gun never went to Gordon." (3:05cr68-5, Dkt.# 465 at 11). (emphasis added). Regardless, at that point petitioner had already stipulated in his plea agreement and again at his plea hearing, to a total drug relevant conduct of 1,763.3 grams of cocaine base; the excessive sentence he complains of is based upon his own admitted drug relevant conduct. In any case, petitioner has known for years that the letter existed, and with retained counsel available to assist him for a full year and seven months prior to the filing of his untimely § 2255 petition, he was better situated than most prisoners to obtain a copy of the letter.

For all of petitioner and his present counsel's claims that "substantial efforts" were required

to obtain Carter's letter, by assiduously scouring petitioner's former attorney Lambert's file and painstakingly searching through co-defendant Carter's docket entries,[11] a cursory read of petitioner's own sentencing transcript belies the claim that the contents of Carter's letter is newly-discovered evidence, the factual predicate of which he could not have previously discovered even with the exercise of due diligence. To the contrary, it is apparent that petitioner has long been aware of the existence, if not the full contents of this letter. It is also clear that petitioner's counsel, despite his claims otherwise, was well aware that petitioner knew of the letter's existence for the three years and four months preceding the filing of his § 2255 petition, facts that both now claim to have only discovered in September 2009.

Finally, regarding petitioner's claims that he could have subpoenaed co-defendant Carter as a witness at his sentencing hearing to impeach him with the contents of the letter, at that point in the proceedings, petitioner was not entitled to a defense. If petitioner had wanted to challenge the Government's version of the facts, he had the opportunity to do so, but failed to take it, at his plea hearing. Petitioner has not presented an iota of evidence regarding any newly-discovered fact that would justify equitable tolling, let alone proven the requisite diligence in attempting to timely file his motion.

The undersigned is unpersuaded by petitioner's claim that he was prevented from filing a timely § 2255 motion by circumstances external to him or beyond his own control. Petitioner was free to file his own § 2255 motion at any time; his attempt to have counsel appointed for that purpose as early as September 28, 2006 indicates his early awareness of his habeas corpus time

---

[11] Petitioner's claim that his counsel's search of Carter's docket reveals that Carter's own § 2255 petition reveals that "there was no gun involved in the within case" (Dkt. # 652 at 5) is likewise without merit; neither Carter's § 2255 motion (3:05cr68-5, Dkt.# 555), its supporting memorandum (3:05cr68-5, Dkt.# 556), or his reply to the Government's response (3:05cr68-5, Dkt.# 561) makes any such assertion.

restrictions. Petitioner retained counsel to present his § 2255 claims for him almost a full year before the statute of limitations for his § 2255 claims expired; why counsel waited until the statute of limitations had expired to bring the claims, the undersigned can only speculate. Petitioner has failed to meet his burden of presenting any evidence to prove that any circumstance beyond his control or external to his own conduct caused his delay. Furthermore, a review of the record shows that not only did petitioner validly waive his right to file a habeas corpus petition in his plea agreement and at his Rule 11 hearing, petitioner's § 2255 claims are also untruthful, unsupported, lacking in merit and procedurally defaulted. Accordingly, he cannot show that gross injustice will occur if the statute of limitation for his § 2255 motion is enforced.

Accordingly, in this case, despite adequate notice from the Court, *inter alia,* the petitioner has failed to show that he is entitled to equitable tolling or that his petition is otherwise timely.

### III.   Recommendation

For the reasons foregoing reasons, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion as untimely and **DISMISSING** the case with prejudice. Further, the undersigned recommends that petitioner's two pending motions for Hearings (Dkt.# 633) and (Dkt.# 653)  be **DENIED** as moot.

Within **fourteen (14) days** after being served with a copy of this Opinion/Recommendation, any party may file with the Clerk of the Court written objections identifying those portions of the Recommendation to which objections are  made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn,

474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record both by electronic means and hard copy.

DATED: 2-25-10

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE